Counsel on People v. Crawford, please approach. Tell us who you are, who you represent, and how much time you'd like. We need two of you up here. Thank you. All right, Counsel. Good morning, Your Honors. My name is Michael Gomez from the Office of the State Appellate Defender. I'm here on behalf of my client, Brian Crawford, and I'd like to reserve two minutes for rebuttal. Okay. And how much time would you like for your argument? Twelve minutes. Twelve minutes and two minutes for rebuttal. Okay. Thank you. Good morning, Your Honors. I'm Assistant State's Attorney, Veronica Calderon-Malavia. I represent the people of the State of Illinois in this matter, and I would like my allotted time. Twenty minutes. All right. We're not time keepers here. We tend to be fairly loose with time, but we'll – okay? And Mr. Gomez, whenever you're ready. Good morning, Your Honors, Counsel, and may it please the Court. My name is Michael Gomez from the Office of the State Appellate Defender on behalf of my client, Brian Crawford. Your Honors, there's only one version of the cyberstalking statute before this Court today. That is the cyberstalking statute that the legislature amended in 2010 specifically to broaden and expand the types of conduct that could be punishable under the law. And that statute, as it currently exists, is facially unconstitutional because the term threatened is overbroad and because the legislature failed to assign amends rea to the required criminal conduct such that it sweeps in far too much innocent conduct. Now, as I said, in 2010, the legislature amended the cyberstalking statute to broaden its scope. Before, the cyberstalking statute focused on just threats of violence. And in 2010, it wanted to cover more acts that could fall under the statute's scope. So for this Court to give a narrowing construction, it would have to be readily susceptible. The plain language of the statute would have to be readily susceptible to that narrowing construction. And it is not. First, the term threatened, it is not qualified, explained, or limited at all in Section C of the statute. It is not limited to threats of violence. It just says threatened. And this Court is required to give threatened its plain meaning. As the State said... And what is that plain meaning? Well, according to Merriam-Webster, Your Honor, the plain meaning of threat is an expression of intention to inflict evil, injury, or damage. Black's Law Dictionary defines it as a communicated intent to inflict harm or loss on another or on another's property. And these are the definitions that the State provided in its own brief. As the Fifth Circuit Court of Appeals in Seals v. McBee recently stated, the definition of threat is broader than true threats. The First Amendment allows legislatures to prescribe true threats, not threats in general. The way the statute is written now, it encompasses anything from a threat to kill or a threat to cause bodily harm, which are properly prescribable conduct under First Amendment jurisprudence, but also threats to break up with someone, threats to fire someone, threats to kick a child out of a house. And those are not prescribable acts under the First Amendment. The legislature knows how to prescribe true threats. It does so in Section A3. It did so before with the original cyber-stalking statute, and it still does so in Section A3. That section reads, a person commits cyber-stalking when he or she knowingly or without lawful justification on at least two separate occasions harasses another person through the use of electronic communication, and at any time transmits a threat of immediate or future bodily harm, sexual assault, confinement, or restraint. Those are threats to inflict some sort of unlawful act or violence on another person. Those are the acts that can be prescribed under the First Amendment, not as Section C provides. There are plenty of examples of threats that are not true threats, but nonetheless fall under the scope of the cyber-stalking statute. As the Supreme Court in Rutherford recently pointed out, a communication directed at someone, a business owner, to boycott their business could easily be described as a threat. That would fall under the definition or the scope of the cyber-stalking statute as it currently exists today. Why can't we imply knowingly, knowingly, because the legislature has done that before, and there's, why can't we just imply that? Well, Your Honor, that would require, that would offend and violate rules of statutory construction as that would require this Court to read in language that the legislature omitted. In amending the statute in 2010, the legislature omitted language of knowingly. The stalking statute does contain that mental state. The cyber-stalking statute does not. Under the Illinois landowners, Illinois Supreme Court case, when the legislature deletes language, it's presumed that the legislature intended to change that law. So if this Court were to read in knowingly now, it would be not that the legislature made a mistake. It would not be giving the legislature, it's given meaning to its true intent in omitting. You mean we would be treating the stalking statute different than the cyber-stalking statute. Yes, Your Honor. And the cyber-stalking statute is much broader than, because of the lack of the knowingly component, is much broader. And there are many acts that can be done with the help of the statute. The legislature wanted to keep up with technological advances and encompass any other ways that... Is there any indication that the legislature in the cyber-stalking statute wanted to encompass somebody who mistakenly pressed send, didn't mean to send it? You know, when a statute doesn't, you know, specifically proscribe, prescribe the mens rea, courts all the time look to the similar statutes. The stalking statute is very similar to cyber-stalking and it requires knowingly. Why can't we do that here? Well, of course, Your Honor, it would require this Court to read in a specific mental state that the legislature did not put in. But we've done that before, right? Courts in Illinois have done that before. Yes, Your Honor. In this specific instance, the legislature has not amended the cyber-stalking statute to include that mens rea. It's not for this Court to go in and correct... But there would be in every case where it's been implied, of course. I mean, the reason you imply it is because it's not there. So I don't understand your argument. Well, Your Honor, even if this Court were to imply that mens rea, even if this Court were to say that, yes, an act under Section A of the cyber-stalking statute must be committed knowingly to obtain a conviction under that statute, that does not correct the over-breadth problems of the term threatened in Section C, which is at issue before this Court today. And there are... But how is that? How doesn't that correct it? Because it has to be knowing. Well, Your Honor, because the definition of the word threatened, whether you knowingly send a communication that does not correct whether, that does not address the fact threatened as it is written in the statute right now, the meaning of that word is much broader than true threats, which can be prescribed under the First Amendment. But that's not what the statute says. So unless the statute says true threats, it's inappropriate? The statute... Is that your position? Yes, Your Honor. The statute would have to be limited to threats of violence or unlawful acts. That's what the Supreme Court stated in Virginia v. Black. There must be a threat to commit an act of violence or some sort of unlawful act upon another person to constitute a true threat under First Amendment jurisprudence. That is not... But the words true threat don't have to be used. The Supreme Court of the United States never said that. No, Your Honor. So the word threatening, it depends on how it's interpreted. And if it's interpreted as a true threat, it wouldn't meet the jurisprudence? Well, Your Honor, there is a true threat provision in the cyberstalking statute in Section A3. So the legislature has shown that it can prescribe true threats, that is, threats to inflict some sort of act of violence or an unlawful act on another human being. And that's in Section A3. So if this Court were to construe the term threaten in Section C as also a true threat, that would be superfluous, which would also be a violation of another rule of statutory construction, where all sections of a statute are given their meaning. And there is no part of the statute that is superfluous. So if this Court were to construe threaten in Section C as meaning a true threat, then it would render Section A3 superfluous. And the legislature has shown in plenty of other statutes that it can prescribe true threats and knows how to prescribe true threats, such as any statute where a defendant threatens a public official. It's not just threatens a public official. It's threatens a public official to an extent where that official is under reasonable apprehension of fear of personal harm or death or safety. So there's no such limitation here in this particular provision. And on another note, the statute does not require any sort of intentionality, which the true threat requires. A true threat requires a subjective intent to transmit a threat. And that is wholly absent from the statute. Isn't a threat considered a threat for its effect on the recipient? That's what the person making the threat says. It's what the person who's on the other end believes. Or what a reasonable person in that position would believe. There is a split of authority among not only Federal but public courts in this jurisdiction about what test to use, what determining, what constitutes a threat. However, this Court has decided in two recent cases, in People v. Goodwin and People v. Wood, relying on the Fourth District's decision in People v. Dye, that according to the Supreme Court's decision in Virginia v. Black, a true threat requires a subjective intent. And so how would the State sustain its burden of proof? Your Honor, the State has to prove intent. Because the defendant can always say, I didn't mean it, I was never going to do it, right? Your Honor, the State has to prove intent in plenty of other offenses. And we recognize that intent is proven through circumstantial evidence. And the State would carry that burden as it does in any other instance where it has to prove intent. So if without anything else, the defendant says, I will kill you, isn't that enough? Your Honor, in that particular instance, depending on the context of that statement, depending on the recipient's knowledge of the defendant, in the totality of the circumstances, it could be enough. Or in the totality of the circumstances, it might not be enough. But here, we have somebody who's so scared, calls the police. Yes, Your Honor. However, this is a facial constitutional challenge. So this Court has to set aside the defendant's conduct as Brian Crawford stands in the place of all of the other innocent people in Illinois whose speech might be chilled because of the vast overbreadth of the cyberstalking statute. The course of conduct definition, though, is pretty specific. It requires two acts, and they're direct, indirect, or through third parties, through any means. But here you have the defendant in text messages saying, you go and die. I will f-ing murder you. I don't care who you call. Get ready to meet your maker. And then right in front of the police on the speakerphone, he says, twice, I'll kill you. How is that not a course of conduct? That meets the definition of what cyberstalking is meant to prevent. Your Honor, we are not challenging the sufficiency of the evidence in this particular case. We are only raising a facial constitutional challenge. And under People v. Aguilar, Terminello v. the City of Chicago, the Court does not look to the conduct or the underlying facts of the case when there is a facial constitutional challenge. So if there were a properly written statute that criminalized true threats, perhaps Brian Crawford would be convicted, and his conviction would be sustained under that statute. But that's not what's here today. If you're right about threats isn't enough, why did the Illinois Supreme Court, after it found the communication language was overbroad and struck that from the statute, why did it go on to analyze Relaford's conduct under the threats language? Your Honor, we disagree that the Court can switch out the different predicate acts. The State proceeded on a theory of threatened. In this case, it had that language in the indictment, and the threat provision is the only prescription or provision before this Court at the moment. Right, but what my question is, in Relaford, the Supreme Court said this communication language is overbroad on its face. We're now going to analyze whether this defendant's conduct was sufficient to constitute a threat. Why did they do that? Your Honor, I am not sure. The Illinois Supreme Court found that all of the provisions were severable in the cyberstalking statute, but we maintain that the only theory of prosecution and the only theory of conviction in this case was on the threat provision. And there is no other provision under which Mr. Crawford's conviction could be sustained here. He was charged under Section A that referenced Section C. He was not charged under the true threat provision in Section A3. So there's no other provision that could be relied upon to sustain Mr. Crawford's conviction here. So you're saying that the test we should use is, I mean, a subjective test, generally? Yes, Your Honor. Is it general intent or a specific intent? A specific intent required. There is a subjective specific intent under Supreme Court jurisprudence that requires a defendant to transmit a threat, to intend to transmit a threat. In Virginia v. Glag, the Supreme Court said true threats encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual. So it's not general intent. If we're going to criminalize speech, we have to criminalize speech where the speaker intends to transmit a communication that is prescribable under the First Amendment to recklessly transmit a threat or to rely on someone's feelings about someone else's words. That would sweep in far too much innocent conduct to uphold a statute. Well, many states and many Federal courts have looked at an objective test, what a reasonable person would do, hearing the threat. Yes, Your Honor. But you don't want, that's not what you're asking for here. Well, Your Honor, and I simply ask this Court to follow the last two cases. Well, the last two cases, go ahead. The last two cases from this district, People v. Wood and People v. Goodwood. But those were a little different in that they were political threats against politicians. There were threats against, yes, there were threats against public officials, and the Court determined what is required to constitute a true threat. And in both of those cases, the Court stated that a true threat requires subjective intent. And again, we do acknowledge that there is a split of authority as to whether there is a reasonable speaker test or a reasonable recipient test. But this Court has decided very recently that a true threat requires subjective intent. If there are no further questions, we ask that this Court find the cyberstalking statute. What about Ashley? You're saying we should hold this case until People v. Ashley is decided? Well, Your Honor, yes. These varying issues are before the Illinois Supreme Court right now in People v. Ashley under the stalking statute. So not the cyberstalking statute that's before this Court. Mr. Crocker was also convicted but not sentenced under the stalking statute. So the Supreme Court will decide both the meaning of the word threaten, provision of the stalking statute, and also the due process challenge. And that hasn't been argued as far as I could tell? No, only the opening brief has been filed, so it's not been argued yet. Thank you. Thank you, Mr. Gomez. Ms. Calderon-Malavia. Good morning, Your Honors. Good morning. Counsel. Again, I'm Assistant State's Attorney Veronica Calderon-Malavia, representing the People of the State of Illinois in this matter. May it please the Senate of the Court, to properly address the issues before this Court, it's necessary to discuss three points. First, we have to look at the proper interpretation of the course of conduct provision in the cyberstalking statute, and only then can we address defendant's First Amendment claim and his substantive due process claim. And as to the interpretation of the statute, the resolution of defendant's claims is entirely dependent upon the interpretation of course of conduct provision. And this Court has a duty to interpret that provision in a constitutional manner if it's possible to do so, and it's possible to do so here. First, unlike the stalking statute, which requires a defendant to knowingly engage in a course of conduct, the cyberstalking statute omitted a mental state. However, in the absence of an express legislative intent to set forth a strict liability offense, under Section 4-3, a court must infer a mental state. And here, in doing so, it's appropriate to look to the companion stalking statute, which shares the same legislative purpose and scheme. And this Court should hold that the cyberstalking statute requires the people to prove the defendant knowingly engaged in a course of conduct. And why would the legislature leave it out? I mean, they're very similar statutes. And they're constantly saying, well, there must be a meaning for leaving it out of this statute as opposed to putting it in. Right. They knew about it. It's clearly inadvertent. There is no indication that they wanted to set out an absolute liability offense, and it's not that uncommon. That's why we have Section 4-3, which directs the Court to supply a mental state. And over here, the solution is easy because the stalking statute provides the proper mental state. And it's not rewriting the statute if the legislature expressly allows for it. And the legislative history also includes specific references to both statutes as being known. Yes. So we have the discussion in the legislature of what they intended. I think the way because they follow this, they mirror each other almost, except for the cyberstalking deals with engaging in a course of conduct through electronic means. Aside from that, they also share the same legislative purpose in being enacted, and that is to prevent, you know, the harm of victims of stalking by allowing the police to intervene before they are injured or killed, and as well as to prevent the terror that's produced by harassing actions. But we can also infer knowing from the course of conduct definition. Yes. Which requires an act. Right. And the mental state should be that the defendant should knowingly engage in a course of conduct, which limits the statute. There was no intent to broaden the statute in the sense, and there was no intent to establish an absolute liability offense. So Mr. Gomez argues that Section A3 of the statute already covers true threats. So when C refers to threats, what does it mean other than that? Is it just superfluous? The people disagree. Section A-3 and Section A-5 set out a completely different offense of cyberstalking. Like A-5, it's having a website, monitoring a website, and through that, threatening someone. And A-5 deals with harassment. So there are different offenses, but they are significant in the sense that they inform what the legislature meant by the term threatens. Section A-5-3 and 5 prohibit a person from transmitting or communicating a threat of immediate or future bodily harm, sexual assault, confinement, or restraint. These are all threats of violence. And although these sections set out a different cyberstalking offense, again, they inform what they meant by the term threatens when they listed it in the course of conduct. They didn't have to define threatens because it was already clear from the statute that it just included threats of violence. And then again, construing the word threatens in this manner is consistent with the purpose of the cyberstalking in the first place. Thus, when properly construed under Section 4-3, the course of conduct only applies to situations where a defendant knowingly threatens a person with an act of violence. And by adopting this interpretation, this Court fulfills its duty to construe a statute in a constitutional manner. Under this reasonable construction, Your Honors, there is no First Amendment violation. Defendants' theory of unconstitutionality is based on a broad and incorrect interpretation of the term threatens. However, Rutherford recognized that the threat provision was limited to true threats, in other words, threats of violence. In doing so, Rutherford understood that the legislature used the term threatens in the legal sense, not the colloquial sense. And as established, as I just established, Rutherford was right because it follows the plain language of the statute. And Rutherford explicitly stated that the threat provision stood separate and apart from the distressing communication provision. Defendant claims in his briefing today that the threat prescription includes threats to perform a lawful act, like breaking up with his girlfriend, calling for a boycott. These hypotheticals are nothing more than distressing communications that were stricken by Rutherford. In fact, in Rutherford, the Court placed the threat of a boycott in the distressing communication provision. And of all of defendants, the hypotheticals also belong there. And even though defendant makes a facial challenge, Your Honor, you're correct. Rutherford looked to the charging instrument to determine what was at issue there. And here, defendant's cyberstalking statute is based on the fact that he sent numerous texts threatening to kill the victim, not mere distressing communication and certainly not threats to perform a lawful act. And so, again, his hypotheticals are irrelevant. As to what is required, whether true threats requires intentionality, the people totally disagree with that position. Defendant relies on Goodwin, Dye, and Woods for that position. But Dye relied on Black and Alanis to make this determination. But Black didn't depart from Watts. And Watts did not require intent. So are you saying there should be an objective test? You know. I mean, we need a test. Okay. You need a test. So is it subject or objective? Right. But the first thing that Dye did was state that intent. Intentionality was required. And knowing was not a sufficient mental state. So first we have to address whether that's correct. Right? And Dye was incorrect. But Dye relied on Black. And Black, the only reason Black discussed intent was because that statute required intent to intimidate. It wasn't discussing an element of a true threat exception. And it didn't depart from Watts. And Watts didn't require intent. And this has made clear that true threat does not require intentionality. It's made by Alanis. At the end of the day, Alanis remanded the case to the lower courts to determine whether intent, knowledge, or even recklessness was the appropriate mental state for that statute, where Congress omitted a mental state. Do we look at a general person, reasonable person, or do we look at the specific intent of the speaker? Most federal courts have applied an objective test. Are you advocating? I'm saying this court doesn't have to really address that conflict. The conflict is between objective and subjective. Do you look at the listener? Do you look at the speaker? Do you look at both? So this statute is amenable to any of those tests, okay, from the perspective of the speaker. The statute requires a mental state of knowledge, and so it can be evaluated under the subjective objective. Did he know he was threatening the victim? With respect to the listener, a jury could be instructed that the people must prove that the victim was actually emotionally distressed or feared for her safety. The fact that the statute sets forth a reasonable standard, also that it must be reasonable, is a protection to the defendant. But the reasonable standard would be an objective test. Right. And the intentionally would be a subjective test. But the statute also requires, the subversive statute also says that the emotional distress is to be perceived from the victim in her situation with all the knowledge that she has of the defendant and his prior acts. So that's pretty subjective. So it's amenable to subjective. But the state would also have to prove that her reaction that she actually had was reasonable. So that adds a protection to the defendant. It doesn't violate the First Amendment. It doesn't violate the due process. In this case, does the objective subjective debate make any difference when you have a defendant who says, I will kill you, get prepared to meet your maker? No, it doesn't. Especially with the facts of this case. You know, his threats were clearly threats to kill. She called the police before she went home. The officer listened to one of the, over the phone, over the speaker phone, listened to two of those threats. She was visibly upset. Although she took back how upset she was at trial. At the time, her distress was observed by the police officer, the detective who interviewed her, as well as the state's attorney. So there was overwhelming proof that she suffered significant emotional distress. And it would be reasonable in those circumstances, any woman would, you know, who has a person at home waiting, threatening to kill her, telling her she's going to meet her maker, would suffer such distress. Also, under the reasonable, a reasonable construction, there's no substantive due process violation. Because, again, the sober stalking statute requires the defendant knowingly engage in a course of conduct. That's a, that means the statute has a culpable mental state when properly construed under Section 4-3. Now, the fact that the legislature applied a negligence standard to the injury or harm caused by the defendant's knowing course of conduct, that doesn't dilute the knowing mental state, nor does it sweep in innocent conduct. For example, in addition to proving the defendant knowingly engaged in a course of conduct by repeatedly threatening violence against the victim, the people would have to prove that the defendant knew or should know that that course of conduct would cause a reasonable person to suffer significant emotional distress or fear for her safety. There's nothing wrong with this. It doesn't dilute the men's right of honors of the criminal act. Rather, it limits the scope of the statute because it holds a defendant responsible only for the foreseeable consequences of his knowing conduct. It's a foreseeability component that connects defendant's knowing conduct to the resulting harm that the legislature wanted to address. And this dual mental state, as I point out in my brief in more detail, is found in other statutes. For example, child pornography, aggravated arson, aggravated discharge. All these statutes have the knows or should know language. And it connects those offenders to the foreseeable consequences of their knowing conduct. So here, the statute comports with substantive due process in the Madrigal line of cases. And there is no substantive due process violation. However, if this court does have constitutional concerns, we would agree that this court should wait for the Illinois Supreme Court to decide People v. Ashley. And for those reasons stated today, those found in my brief, we'd ask this court to affirm defendant's conviction for cyberstalking. Thank you very much. Mr. Gomez? The state is asking this court to essentially review a completely different statute than the one that currently exists today. The current statute does not have a knowing mens rea and does not have any qualification on the threatened provision. Section 4.3 does not give this court a magic pen to write in words that the legislature omitted and has not amended to include in the past nine years. That allows the state to obtain a conviction on a general intent crime by proving either intent, knowledge, or recklessness at trial. Moreover, even if this court were to find that the conduct must be engaged in knowingly here, that still allows the state to convict someone for essentially negligent infliction of emotional distress dependent upon the recipient's perception of the communication, which, again, speaks in far too much innocent conduct for this statute to be constitutional. The state says that Section A.3, that the threat qualification in Section A.3, informs the meaning in Section A, and that is just not true. The threat is not defined in Section C where the definitions that apply to the entire statute are found. It's a completely separate provision that criminalizes true threats. The threat in Section C, I'm sorry, the threat before this court today is not so limited or prescribed. And Relaford did not decide anything about the true threat or the threat provision that's before this court today. It expressly was not before that court, and the plain language of the statute does not support the state's interpretation. The state also does not provide any viable explanation as to why a threat to boycott a business that causes the business owner emotional distress does not fall under this statute. It would require a completely different statute for the state's theory to... And a threat that is not. A true threat is not, Your Honor, but a speaker could easily say, I'm going to threaten to boycott your business if you don't clean up the neighborhood. That's a threat. We could call it a communication. It is also a communication, but it's also a threat. It is an expression of an intention to inflict injury or damage. In that case, it would be economic loss, but it's still a threat, and it still falls under the statute. And we cannot rely, and there are cases, United States v. Stevens, that have said we cannot rely on the government's position that they will not prosecute just to find a statute constitutional because we don't have the way for people to be prosecuted or leave it up to individual law enforcement officers or prosecutors to prosecute certain offenses that technically do fall under the statute. But here we're talking about threats of immediate or future bodily harm, sexual assault, confinement, or restraint, and the threat is directed towards a person or a family member of that person. Yes, Your Honor, that's Section A3, but the threat to boycott a business could easily fall under Section A with the course of conduct in Section C. That is a threat. It's not a threat for bodily harm, so it could not be prosecuted as a true threat. It also can't be prosecuted at all because that is protected speech. A parent who threatens, who says, I will threaten, I'm threatening you to kick you out of my house if you continue dating this other person, that is a threat if it's communicated twice in a text message or e-mail. It falls under the statute. And it doesn't say anything about immediate or future bodily harm, sexual assault, confinement, or restraint? Correct, Your Honor. That's the true threat provision in Section A. I'm referring to a prosecution under the threat provision in – I'm sorry, that was the true threat provision in Section A3. I'm referring to Section A with the course of conduct being described in Section C as just a general threat. And the plain meaning of general threat would encompass those two examples, which are protected speech. We all could have violated this statute many times this week with any text message or e-mail we've sent. And that simply cannot stand. I think you better speak for yourself on that one, Mr. Goldman. I could have violated it many times today, Your Honor. But that is not what the First Amendment prescribes. And the First Amendment never was intended to prescribe that type of conduct. So for these reasons, we ask that this Court find the cyberstalking statute, as it's written and exists today, that is facially unconstitutional and reverse Mr. Crawford's conviction. Thank you. Thank you very much. Mr. Gomez, Ms. Calderon-Malavia, thank you very much for your arguments here today and your excellent briefs. You've given us a lot to think about, and we will take the matter under advisement.